**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| ANA BEATRIZ LOPEZ LIMA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LONCH, INC. t/a LONCH HOME IMPROVEMENT, *et al.*, <br><br> Defendants. | No. 19-cv-346 (EGS) |

## MEMORANDUM OPINION

Plaintiffs Ana Beatriz Lopez Lima ("Ms. Lopez Lima") and Jorge B. Sanchez Argueta ("Mr. Sanchez Argueta") bring this action against Defendants Lonch, Inc., trading as Lonch Home Improvement ("Lonch"), and Steve John Loney ("Mr. Loney," together with Lonch, "Defendants"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the D.C. Minimum Wage Revision Act ("DCMWRA"), D.C. Code § 32-1001 *et seq*. Plaintiffs claim that Defendants failed to pay them for hours worked in excess of forty hours per week at a rate less than one and one-half times their regular rate. In their Answer, Defendants assert two counterclaims for conversion and breach of the duty of good faith and fair dealing, alleging that Ms. Lopez Lima engaged in certain misconduct by, *inter alia*, misusing Defendants' property and falsifying time and attendance records.

Pending before the Court is Ms. Lopez Lima's motion to dismiss Defendants' Counterclaims under Federal Rule of Civil Procedure 12(b)(1). Upon careful consideration of the motion, opposition and reply thereto, the applicable law, and the entire record herein, the Court will exercise supplemental jurisdiction over Defendants' two common-law counterclaims pursuant to 28 U.S.C. § 1367. Therefore, the Court **DENIES** Plaintiff's Motion to Dismiss Defendants' Counterclaims.

## I. Background

### A. Factual Background

The following facts reflect the allegations in the Complaint and the Counterclaim. *See, e.g.*, Compl., ECF No. 1 at 1-5; Defs.' Verified Answer & Countercl. ("Defs.' Countercl."), ECF No. 12 at 1-7.[1] In resolving Ms. Lopez Lima's motion, the Court "accept[s] as true all of the factual allegations contained in the [Counterclaim] and draw[s] all reasonable inferences in favor of [the counter-claimants]." *Dalley v. Mitchell Rubenstein & Assocs., P.C.*, 172 F. Supp. 3d 6, 11 (D.D.C. 2016).

At all relevant times, Mr. Loney, a resident of the District of Columbia (the "District"), owned and operated Lonch.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Compl., ECF No. 1 at 2 ¶ 4, 3 ¶ 14. Lonch is incorporated in the District, where its principal place of business is located. *E.g.*, *id*. at 2 ¶ 3; Defs.' Countercl., ECF No. 12 at 1 ¶ 2. Mr. Sanchez Argueta and Ms. Lopez Lima both reside in Maryland, and they worked for Lonch as supervisors and laborers. Compl., ECF No. 1 at 2 ¶ 1-2. Mr. Sanchez Argueta worked there from "approximately March 2018 until December 7, 2018," and his "regular rate of pay was between $18.75 and $30.00 per hour." *Id*. at 3 ¶ 10. Ms. Lopez Lima alleges that she worked for Lonch from "approximately 2005 until June 19, 2018," and her "regular rate of pay was between $18.75 and $30.00 per hour." *Id*. at 3 ¶ 9.

According to Defendants, Ms. Lopez Lima performed various tasks for Lonch as an independent contractor on a temporary basis between 2005 and 2016, including working on lead abatement projects and providing administrative services. Defs.' Countercl., ECF No. 12 at 4 ¶ 1-2. And Ms. Lopez Lima did not perform any tasks for Lonch in 2017. *Id*. at 4 ¶ 3. In March 2018, Ms. Lopez Lima worked with Lonch on one lead abatement project over ten days from 8:00 AM to 5:00 PM, and she had a lunch break from noon to 1:00 PM each day. *Id*. at 4 ¶ 4. Again, in July 2018, Ms. Lopez Lima worked on a lead abatement project at Lonch for a total of thirteen days from 8:00 AM to 5:00 PM with a lunch break from noon to 1:00 PM per day. *Id*. at 4 ¶ 5.

3

From August 2018 to December 2018, Ms. Lopez Lima worked on different lead abatement projects, and she served as the "charge person" for Lonch in the absence of the assigned project manager. *Id*. at 4-5 ¶ 6.

As a result of Mr. Loney's illness, Mr. Loney entrusted Ms. Lopez Lima in September 2018 with "handling business matters," including: (1) "managing and tracking employee time and attendance records"; and (2) "securing and maintaining equipment and materials required for the projects and contracts of [Lonch]." *Id*. at 5 ¶ 7. Between October 1, 2018 and November 23, 2018, Ms. Lopez Lima maintained the time and attendance records for Lonch's projects, which included recording and maintaining those records for herself, Mr. Sanchez Argueta, and other individuals working on the projects. *Id*. at 5 ¶ 8.

### B. Procedural History

On February 11, 2019, Ms. Lopez Lima and Mr. Sanchez Argueta filed this action under the FLSA and the DCMWRA, alleging that "Defendants did not pay [them] one-and-one-half times (1.5x) their hourly rate for hours worked in excess of 40 during a single work week." Compl., ECF No. 1 at 3 ¶ 12. According to Ms. Lopez Lima and Mr. Sanchez Argueta, "Defendants paid [them] by money order, rather than payroll check" to "hide the number of hours that [they] worked per week." *Id*. at 3 ¶ 13. Based on Defendants' alleged failure to make overtime payments

4

to Ms. Lopez Lima and Mr. Sanchez Argueta, *id*. at 4 ¶ 16, they assert that Defendants acted in bad faith by willfully and intentionally failing to compensate them for hours worked in excess of forty hours per week in violation of the FLSA ("Count I") and the DCMWA ("Count II"), *id*. at 4 ¶¶ 17-23, 5 ¶¶ 24-29.

In response, Defendants filed the Verified Answer and Counterclaim on April 5, 2019, asserting two common-law counterclaims against Ms. Lopez Lima. *See* Defs.' Countercl., ECF No. 12 at 4-7 ¶¶ 1-22. First, Defendants allege in support of their conversion claim—Count I—that Ms. Lopez Lima:
(1) "converted several thousand dollars, if not more, of the Defendants' money to herself" and she "never sought consent from Defendants to convert these funds for her own personal use," *id*. at 5 ¶ 11; (2) "falsely recorded and maintained time and attendance records not only for herself and [Mr.] Sanchez Argueta, but for other workers on the projects involving [Lonch] specifically, by recording days and hours for time they did not report for and for work they did not perform," *id*. at 5-6 ¶ 12; (3) "took into her own personal possession, removed and/or discarded materials, equipment and other property of value owned by the Defendants without knowledge, authorization, permission or consent of the Defendants and converted [the] same for [her] own personal enrichment," *id*. at 6 ¶ 14; and (4) "specifically took into her own personal possession, removed and/or discarded

5

employee time and attendance records that were the property of [Lonch] without knowledge, authorization, permission or consent of the Defendants," *id*. at 6 ¶ 15. Defendants allege that Ms. Lopez Lima engaged in this conduct between October 1, 2018 and November 23, 2018. *Id*. at 5-6 ¶¶ 11-12, 14-15.

Next, Defendants assert that Ms. Lopez Lima's actions constitute a breach of the duty of good faith and fair dealing ("Count II"), alleging that "Ms. Lopez Lima was not authorized to use Defendants' funds for her own personal use and benefit nor was she authorized to use Defendants' property for [her] own personal use and benefit." *Id*. at 7 ¶ 21; *see also id*. at 6 ¶ 16 ("[Ms.] Lopez Lima engaged in a pattern and practice of using [Lonch's] funds, equipment, materials and other property in her own personal interest and/or to enrich herself."). Defendants further allege that they suffered damages as a result of Ms. Lopez Lima's breach. *Id*. at 7 ¶ 22; *see also id*. at 6 ¶ 17 ("[Ms.] Lopez Lima has failed and refused to return, refund, reimburse and/or turn over money, equipment, material, employee time and attendance records and other property of the Defendants that she converted for her own personal use and/or gain.").

### C. Ms. Lopez Lima's Motion

On April 10, 2019, Ms. Lopez Lima moved to dismiss both counterclaims for lack of subject-matter jurisdiction under Rule 12(b)(1), *see generally* Pl.'s Mot. to Dismiss Defs.' Countercl.

("Pl.'s Mot."), ECF No. 13, arguing that Defendants brought their counterclaims to "intimidate and retaliate against her protected rights under the FLSA and the [DCMWRA]," Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), ECF No. 13-1 at 2. Defendants then filed their opposition brief. *See generally* Defs.' Opp'n, ECF No. 15. Thereafter, Ms. Lopez Lima filed her reply brief. *See generally* Pl.'s Reply, ECF No. 16. The motion is ripe and ready for the Court's adjudication.

**II. Legal Standard**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). On a Rule 12(b)(1) motion to dismiss, the party seeking to invoke a federal court's jurisdiction bears the burden of establishing jurisdiction by a preponderance of the evidence. *Wisey's #£1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 188 (D.D.C. 2013). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the [party]'s allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). In accepting as true all of the factual allegations in the counterclaim and drawing all reasonable inferences in favor of the counterclaimant, the court "may consider materials outside

7

the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

"When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise pendent, or supplemental, jurisdiction over related claims under state law." *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996) ("A district court's decision to resolve state law claims is reviewed for an abuse of discretion."). A court employs "a two-part test to determine when the assertion of jurisdiction over a state law claim is appropriate." *Id*. The court first "determine[s] whether the state and the federal claims 'derive from a common nucleus of operative fact'; if they do, the court has the *power*, under Article III of the Constitution, to hear the state claim." *Id*. (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). The court "must then decide whether to exercise its *discretion* to assert jurisdiction over the state issue," considering factors such as "judicial economy, convenience and fairness to litigants." *Id*. (quoting *Gibbs*, 383 U.S. at 726). "If the court finds the claims do not derive from a common nucleus of operative fact, it cannot exercise supplemental jurisdiction and the claims must be dismissed under Rule

12(b)(1)." *Wisey's #£1 LLC*, 952 F. Supp. 2d at 188.

**III. Analysis**

Neither party disputes that the Court lacks an independent basis for subject-matter jurisdiction over Defendants' counterclaims. *See, e.g.*, Pl.'s Mem., ECF No. 13-1 at 1-2, 7; Defs.' Opp'n, ECF No. 15 at 1-4. There is no federal question jurisdiction over Defendants' common-law counterclaims because Defendants assert them under District of Columbia law, *see* 28 U.S.C. § 1331; and there is no diversity jurisdiction because Defendants fail to plead an amount in controversy that exceeds $75,000, *see* 28 U.S.C. § 1332(a). Accordingly, the Court may only exercise supplemental jurisdiction as set forth in 28 U.S.C. § 1367. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (explaining that Congress codified the principles for supplemental jurisdiction in § 1367). For the reasons explained below, the Court will exercise supplemental jurisdiction over Defendants' common-law counterclaims.

### A. The Court Has Supplemental Jurisdiction Over Defendants' Counterclaims

Section 1367(a), in relevant part, provides that in civil actions in which federal district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims

9

in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A federal district court "may decline to exercise supplemental jurisdiction over a [state] claim" on four grounds. *Id.* § 1367(c). First, "the claim raises a novel or complex issue of State law." *Id.* Second, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." *Id.* Third, "the district court has dismissed all claims over which it has original jurisdiction." *Id.* And fourth, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.*[2]

In this case, there is no dispute that the Court has original jurisdiction over this action because the FLSA claim squarely falls within this Court's federal question jurisdiction. *See, e.g.*, Compl., ECF No. 1 at 2 ¶ 8; Pl.'s Mem., ECF No. 13-1 at 2-5; Defs.' Opp'n, ECF No. 15 at 1-4. The parties, however, dispute whether Ms. Lopez Lima's FLSA claim and Defendants' counterclaims "derive from a common nucleus of operative fact" such that the Court "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383

---

[2] For purposes of the supplemental jurisdiction analysis, "the term 'State' includes the District of Columbia." 28 U.S.C. § 1367(e).

10

U.S. at 725. "A federal claim and a state law claim form part of the same Article III case or controversy," in turn, "if the two claims derive from a common nucleus of operative fact such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the [C]ourt comprises but one constitutional case." *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 423–24 (D.C. Cir. 2006) (citations and internal quotation marks omitted). "[S]tate law claims do not derive from a common nucleus of operative facts if there is almost no factual or legal overlap between the state and federal claims." *Chelsea Condo. Unit Owners Ass'n v. 1815 A St., Condo Grp., LLC*, 468 F. Supp. 2d 136, 141 (D.D.C. 2007).

With these principles in mind, the Court finds that there is sufficient factual overlap between the FLSA claim and the common-law counterclaims. Ms. Lopez Lima acknowledges this overlap between the two sets of claims, stating that: (1) "Defendants' counterclaims share only minimal factual overlap with [her] overtime claims," Pl.'s Mem., ECF No. 13-1 at 4; and (2) "[a]t best, Defendants' counterclaims share background facts with [her] wage claims," *id*. at 5. But Ms. Lopez Lima contends that "Defendants' allegations [in the counterclaims] are far afield from the current litigation, which is squarely focused on the narrow issue of Plaintiffs' unpaid overtime." *Id*. at 4. Ms. Lopez Lima argues that "Defendants'

11

state law counterclaims do not arise from a common nucleus of operative facts with [her] FLSA claim." *Id*. at 5.

To support her contention, Ms. Lopez Lima relies on cases in which courts have held that state-law counterclaims do not share a common nucleus of operative fact with FLSA claims where the counterclaims arose from either a "close working relationship" or an "employer-employee relationship." *Id*. at 4-5 (citing *Molnoski v. Batmasian*, 246 F. Supp. 3d 1336, 1338-39 (S.D. Fla. 2017); *Williams v. Long*, 558 F. Supp. 2d 601, 606 (D. Md. 2008)). Some "[c]ourts that have so held have recognized that adjudicating counterclaims filed by an employer in the same context as a suit seeking unpaid wages may be inconsistent with the purpose of the FLSA—to assure to the employees of a covered company a minimum level of wages." *Ayub v. Picco*, 293 F. Supp. 3d 215, 216 (D.D.C. 2018) (citation and internal quotation marks omitted). That approach, however, is not uniform. *See id.; see also* Defs.' Opp'n, ECF No. 15 at 3 (citing cases).

Other courts have held that FLSA claims and state law claims derive from a common nucleus of operative fact. *See, e.g., Jones v. Changsila*, 271 F. Supp. 3d 9, 22 (D.D.C. 2017) (concluding that "the factual bases for [the] FLSA and state law [tort] claims overlap[ped] in sufficient respects" because "[b]oth sets of claims concern[ed] the same parties, the same employment relationship, and the same subject matter—[the

plaintiff's] wages"); *Garcia v. Nachon Enters., Inc.*, No. 15-23416-CIV, 2016 WL 1077107, at *2 (S.D. Fla. Mar. 18, 2016) (concluding that the FLSA claims and the counterclaims for breach of fiduciary duty and conversion were "logically related and stem[med] from the parties' employer-employee relationship" where the plaintiff allegedly "clock[ed] into work but then [left] the store for extended periods of time to handle personal matters and then submit[ted] fraudulent hours"); *Nicholsen v. Feeding Tree Style, Inc.*, No. 12 CIV. 6236 JPO, 2014 WL 476355, at *3-*4 (S.D.N.Y. Feb. 6, 2014) (finding factual overlap between the "faithless servant counterclaims" and the FLSA claims where the court would need to determine whether the plaintiff had stolen a ledger recording employees' work hours).

Here, the outcome of this case may turn on whether Lonch maintained accurate payroll records. *See* 29 U.S.C. § 211(c) (employer must preserve proper records of hours worked by employees and wages paid to employees); *see also* Defs.' Opp'n, ECF No. 15 at 3 ("The FLSA requires employers to keep accurate time and attendance records."). Ms. Lopez Lima, who claims to be a former "employee" of Lonch within the meaning of the FLSA, *see* Compl., ECF No. 1 at 2 ¶ 6, will bear "the burden of proving that [she] performed work for which [she] was not properly compensated," *Akinsinde v. Not-For-Profit Hosp. Corp.*, No. 16-CV-00437 (APM), 2018 WL 6251348, at *5 (D.D.C. Nov. 29, 2018)

13

(citation and internal quotation marks omitted). "However, this burden is lessened when . . . the employer has not maintained proper records of wages and hours." *Id*.

Defendants contend that Ms. Lopez Lima took and destroyed time and attendance records, and those records are "critical to showing the hours worked by [Ms. Lopez Lima, Mr. Sanchez Argueta,] and others." Defs.' Opp'n, ECF No. 15 at 3. Defendants claim that Ms. Lopez Lima "acknowledged prior to filing suit that [she] knowingly and intentionally discarded materials and time and attendance records that were the property of [Lonch] and that were, maintained in the ordinary course of business of [Lonch]." *Id*. Defendants argue that "[s]aid materials and time and attendance records are vital and would have served as evidence showing the exact dates and number of hours worked by [Ms. Lopez Lima and Mr. Sanchez Argueta]," and that those records "would have served to dispute the claims of . . . overtime pay." *Id*. And Ms. Lopez Lima notes that Defendants may argue that she "somehow tampered with Defendants' records" even if their counterclaims are dismissed. Pl.'s Reply, ECF No. 16 at 1 n.1.

The Court concludes that at least two issues—(1) whether Lonch maintained accurate records; and (2) whether Ms. Lopez Lima took and destroyed those records—illustrate the substantial factual overlap between the federal overtime claims and the

common-law counterclaims. "The existence and accuracy of [the] records [of hours worked] will be at issue in [this] litigation, providing an *important factual overlap* between [Ms. Lopez Lima's] original claims and Defendants' allegations that [Ms. Lopez Lima] padded [her] hours." *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *4 (S.D.N.Y. Aug. 1, 2019) (emphasis added). Indeed, Defendants allege that Ms. Lopez Lima recorded days and hours for certain periods of time that she and Mr. Sanchez Argueta did not actually work. Defs.' Countercl., ECF No. 12 at 6 ¶ 12. Defendants further allege that other workers, including Plaintiffs, were compensated for time and work that they did not perform. *Id.* at 6 ¶ 13; *see also* Pl.'s Reply, ECF No. 16 at 2 (acknowledging that "any time and pay records will likely be evidence in Plaintiffs' FLSA and [DCMWRA] case"). The Court therefore finds that the FLSA claim and Defendants' counterclaims share a common nucleus of operative fact to support supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).[3]

---

[3] Having found that there is factual overlap between the FLSA claim and the counterclaims, the Court need not address whether there is legal overlap because a common nucleus of operative fact exists if there is "factual *or* legal overlap between the state and federal claims." *Chelsea Condo. Unit Owners Ass'n*, 468 F. Supp. 2d at 141. (emphasis added). This Court will not consider Ms. Lopez Lima's argument that "[t]he elements of [the counterclaims] will not overlap" with her claims because she raised it for the first time in her reply brief. Pl.'s Reply, ECF No. 16 at 2; *see also Singletary v. District of Columbia*,

15

## B. The Court Will Not Decline to Exercise Supplemental Jurisdiction

The Court next considers whether it should decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Although the Court has the "*power* to hear [Defendants' counterclaims]," the Court is not required to do so. *Prakash v. Am. Univ.*, 727 F.2d 1174, 1183 (D.C. Cir. 1984). Supplemental jurisdiction is a doctrine of discretion. *Gibbs*, 383 U.S. at 726. As previously stated, the Court may decline to exercise supplemental jurisdiction over state-law claims based on the four reasons enumerated in Section 1367(c).

The Court will not decline to exercise supplemental jurisdiction over Defendants' counterclaims for conversion and breach of the duty of good faith and fair dealing for three reasons: (1) those common-law claims do not raise any novel or complex issues of state law; (2) the FLSA claims have not been dismissed; and (3) there are no other compelling reasons to refuse jurisdiction. *See* 28 U.S.C. § 1367(c). The remaining issue is whether Defendants' counterclaims "substantially predominate[]" over the FLSA action, thereby providing this Court with a reason not to exercise supplemental jurisdiction over the counterclaims. *Id*. § 1367(c)(2).

---

685 F. Supp. 2d 81, 92 (D.D.C. 2010) ("[C]ourts should decline to consider arguments raised for the first time in reply.").

The Court is not persuaded by Ms. Lopez Lima's argument that Defendants' counterclaims "would predominate over the discrete issues raised by Plaintiffs' wage claims." Pl.'s Mem., ECF No. 13-1 at 6. Ms. Lopez Lima contends that "Defendants' counterclaims raise numerous issues of state law . . . that do not relate to Plaintiffs' overtime." *Id*. at 6. But Ms. Lopez Lima fails to specify what those issues are in her memorandum of law. *See id*. Accordingly, Ms. Lopez Lima has failed to demonstrate that Defendants' allegations—her alleged destruction of the time and attendance records, falsification of records, and receipt of payments for work not performed—would substantially predominate over the FLSA claims. *See Beltran v. Medcure, Inc.*, No. 6:13-CV-234-ORL-28, 2013 WL 3833208, at *3 (M.D. Fla. July 23, 2013) (finding that supplemental jurisdiction was proper where "[t]here [was] no showing that the [conversion] claim for the [plaintiff's] alleged overpayment [would] predominate over the FLSA claim"). The Court therefore finds that Defendants' counterclaims do not substantially predominate over the FLSA claims, over which this Court has original jurisdiction, for purposes of Section 1367(c)(2).

Finally, "the values of judicial economy, convenience, fairness, and comity" militate in favor of this Court retaining jurisdiction over all of the claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In response to Defendants'

17

argument that this Court should resolve Plaintiffs' claims and Defendants' counterclaims based on those values, *see* Defs.' Opp'n, ECF No. 15 at 3-4, Ms. Lopez Lima "fear[s] that Defendants' counterclaims would overtake Plaintiffs' claims and cloud the process," Pl.'s Reply, ECF No. 15 at 3. To the contrary, "any discovery conducted on the [FLSA claims] might aid a gathering of facts relevant to local-law issues." *Prakash*, 727 F.2d at 1183; *see also Beltran*, 2013 WL 3833208, at *3 (finding that "the traditional rationales (judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together) all favor[ed] retaining jurisdiction" over a conversion counterclaim and a FLSA claim). Accordingly, the Court will exercise supplemental jurisdiction over Defendants' counterclaims.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Dismiss Defendants' Counterclaims. Plaintiff shall file an answer to Defendants' Counterclaims within fourteen days of the date of this Memorandum Opinion. *See* Fed. R. Civ. P. 12(a)(4)(A). A separate Order accompanies this Memorandum Opinion.

**SO ORDERED**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 24, 2020**